WARD, Appellant,

v.

GRAYDON, HEAD & RITCHEY et al., Appellees.*

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2001–03–038.

Decided Dec. 3, 2001.

---

* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in (2002), 94 Ohio St.3d 1507, 764 N.E.2d 1037.

Gustavson, Lewis & Jones and William M. Gustavson, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Thomas S. Shore, Jr., for appellees Graydon, Head & Ritchey and Michael Hirschfield.

---

Valen, Judge.

{¶ 1} Plaintiff-appellant, Garry E. Ward, appeals the judgment of the Clermont County Court of Common Pleas granting the motion of defendants-appellees, the law firm of Graydon, Head & Ritchy ("GH&R") and attorney Michael Hirschfeld, to compel testimony. We affirm the judgment of the trial court.

{¶ 2} Appellant opened a plant store on Beechmont Avenue in Hamilton County in May 1995. In September 1996, appellant and Lyle Schmidt formed a corporation known as Garry's Plant Land, Inc. Garry's Plant Land issued one hundred shares of stock. Appellant owned seventy percent of the stock and Schmidt owned thirty percent of the stock in the company. The law firm of GH&R provided legal services to Garry's Plant Land. In May 1997, GH&R also began to represent appellant in his personal capacity in a lawsuit relating to Garry's Plant Land.

{¶ 3} In August 1997, the inventory of Garry's Plant Land was liquidated and all profits of the business were channeled toward the construction of a new garden store facility. The title to the real estate was placed in the name of a company controlled by Schmidt rather than in the name of Garry's Plant Land.

{¶ 4} In September 1997, Schmidt advised appellant that he would not loan Garry's Plant Land any more money unless appellant agreed to Schmidt's receiving sixty percent of the company stock. On September 3, 1997, appellant and Schmidt met with attorney Dale Donithan in order for Donithan to examine a proposed agreement appellant and Schmidt drafted. As a result, Donithan drafted an agreement that would allow Schmidt to acquire additional stock in Garry's Plant Land. Schmidt was dissatisfied with Donithan's proposed agreement.

{¶ 5} Appellant and Schmidt decided to have attorney Michael Hirschfeld, an attorney with GH&R, re-draft the agreements necessary for the reallocation of stock percentages. Appellant told Hirschfeld that he would consider the reallocation of stock percentages only if he had "the right to regain majority control." Hirschfeld prepared the documents. They were signed September 26, 1997.

{¶ 6} A stock option agreement authorized seventy-five shares of stock at $2,000 per share to be sold to Schmidt. Once the stock option agreement took effect, Schmidt would own one hundred five shares while appellant would still own seventy shares of the one hundred seventy five shares in the company. This would give Schmidt sixty percent and appellant forty percent. A "stock redemp-

tion agreement" provided appellant with the option to purchase fifty-two shares from Schmidt at specified prices before August 31, 2001. This option to purchase, if exercised, would increase appellant's number of shares to one hundred twenty-two and thus his percentage would return to his original seventy percent interest in the business.

{¶ 7}   The stock redemption agreement specifically superseded a September 18, 1996 buy-sell agreement between appellant and Schmidt. The September 18 agreement provided appellant with protection against dilution of his stock by Schmidt. However, the stock redemption agreement did not contain an anti-dilution clause. The stock option agreement did not contain an anti-dilution clause, either. Appellant later maintained that he believed that there were anti-dilution clauses in both agreements because he asked Hirschfeld "to preserve his right to regain majority control."

{¶ 8}   On February 20, 1998, Schmidt sent appellant notice of a meeting of the shareholders and directors of Garry's Plant Land to consider a resolution increasing the capital of the company and to elect an additional director. When appellant received his notice he met with Brad Haas, an attorney with the law firm of Katz, Teller, Brand & Hild. On March 19, 1998, the meeting of the shareholders and directors was held to consider the resolution. Schmidt used his majority interest in the business to elect a third director. The third director agreed with Schmidt that the company would sell an additional one hundred shares of stock at $1,000 per share. Appellant was offered the option to purchase forty percent of the shares within forty-eight hours, but appellant could not. Schmidt then bought all one hundred shares. These actions served to dilute appellant's interest in the company to twenty-five and one-half percent, and made it impossible for appellant to regain control of the business even if the stock option agreement was exercised.

{¶ 9}   In April 1998, Schmidt fired appellant for allegedly stealing $400 from petty cash. Schmidt offered appellant $5,000 as severance pay. Appellant was requested to sign a release of all claims against the company, its shareholders, and directors. The release had been prepared by Hirschfeld. Appellant called Haas at home. Haas came to the meeting to act as appellant's attorney.

{¶ 10}   In May 1998, GH&R withdrew from its representation of appellant but continued to represent Garry's Plant Land. Appellant opened a competing plant store called "The Original Garry's Plant Land, Inc."

{¶ 11}   On September 25, 1998, appellant filed a complaint against GH&R and Hirschfeld, asserting that they committed professional negligence in preparing the stock redemption agreement and stock option agreement. In this complaint, appellant alleged that GH&R and Hirschfeld had a conflict of interest in the matter, of which he was unaware. Appellant further alleged that the documents

were not prepared with his interests in mind when he believed that GH&R and Hirschfeld were representing his interests.

{¶ 12} In response to appellant's complaint, GH&R and Hirschfeld argued that appellant was advised of the conflict of interest at the outset and that he was advised to seek his own counsel to represent his interests. The trial court determined that the allegations of the complaint and the testimony of appellant placed at issue whether appellant communicated with other counsel concerning the same matter at the time that appellant stated that he was relying on the representations of GH&R and Hirschfeld. Therefore, the motion to compel testimony of Haas and Donithan was granted. This appeal follows in which appellant raises a single assignment of error:

{¶ 13} "The trial court committed reversible error in granting the motion to compel the testimony of attorneys, other than the defendants in this legal malpractice action, to testify about their conversations with the appellant."

{¶ 14} Appellant argues the trial court erred in applying the implied-waiver doctrine to the attorney-client privilege given the facts of this case. Appellees, on the other hand, argue that appellant impliedly waived the attorney-client privilege when appellant placed privileged communications pertaining to the litigation at issue.

{¶ 15} Privilege is the cornerstone upon which the attorney-client relationship is founded. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584. The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice. *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 329, 612 N.E.2d 442; see, also, R.C. 2317.02(A). Thus, the attorney-client privilege belongs to the client, and the only materials protected are those which involve communications with the attorney. Id.

{¶ 16} Whether the attorney-client privilege is waived in proceedings wherein privileged communications pertaining to the litigation are at issue is a question that has received little attention by the courts of this state but has been considered extensively by the federal courts. See *Schaefer*, 82 Ohio App.3d at 329–330, 612 N.E.2d 442. The federal courts have developed three approaches to consider the effect of filing of such a suit on the various privileges asserted by the

plaintiff. Id. The effect of filing such a suit is called the doctrine of implied waiver of the attorney-client privilege.

{¶ 17} The Eighth Appellate District of this state, in *H & D Steel Serv., Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), Cuyahoga App. No. 72758 at 3, 1998 WL 413772, has outlined the three approaches the federal courts have developed. In the first approach, the "automatic waiver" rule mandates that any litigant who brings a claim, counterclaim, or affirmative defense that injects privileged matter into the litigation automatically waives whatever privileges he may have had. Id., quoting *Indep. Prod. Corp. v. Loew's, Inc.* (S.D.N.Y. 1958), 22 F.R.D. 266; *Ghana Supply Comm. v. New England Power Co.* (D.Mass.1979), 83 F.R.D. 586. The rationale for this approach is that the presentation of the claim or defense inherently prevents the assertion of privilege. Id.

{¶ 18} The second approach is a loose "balancing test," in which the need for discovery of privileged materials is balanced against the need to protect the confidentiality of the materials. Id. See, also, *Black Panther Party v. Smith* (C.A.D.C.1981), 661 F.2d 1243.

{¶ 19} The third approach employs a tripartite test to determine whether the privilege has been waived, and is espoused in *Hearn v. Rhay* (E.D.Wash. 1975), 68 F.R.D. 574. According to the "*Hearn*" test, if (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party, and (2) through the affirmative action, the asserting party has placed the protected information at issue by making it relevant to the case, and (3) application of the privilege would deny the opposing party access to information vital to its defense, the court should find that the asserting party has impliedly waived the privilege through its own affirmative conduct.

{¶ 20} We choose to follow and find the *Hearn* approach is best suited to deal with the complexities of the attorney-client privilege. We note that the Second Appellate District and the Eighth Appellate District of this state have adopted this approach. See *Schaefer*, 82 Ohio App.3d at 331, 612 N.E.2d 442; *H & D Steel* (July 23, 1998), Cuyahoga App. No. 72758, at 3, 1998 WL 413772. Furthermore, the Ohio Supreme Court, although never having extensively discussed this issue, has nevertheless suggested its disapproval of the "automatic waiver" approach. See *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 179, 2 O.O.3d 373, 358 N.E.2d 521. In *Waldmann*, the court held that, as to the client's subsequent address, the filing of a complaint does not constitute a waiver of the attorney-client privilege requiring the attorney to divulge that address. Id. Given the *Waldmann* holding and the reasonableness and acceptance of the *Hearn* approach in other district courts of this state, we follow the doctrine of implied waiver of the attorney-client privilege. Therefore, the trial court did not

err in applying the implied-waiver doctrine to the facts of this case to determine whether the attorney-client privilege was waived by appellant.

{¶ 21} Appellant next argues that a client who initiates litigation for malpractice does not waive the attorney-client privilege relating to communications with other attorneys consulted to assist the client "to ameliorate the effects of the malpractice of the former attorney and law firm." At common law, the attorney-client privilege could be waived either expressly or by conduct implying waiver. See 8 Wigmore, Evidence (McNaughton Rev.1961), Section 2327. The Ohio statute on attorney-client privilege, R.C. 2317.02(A), states:

{¶ 22} "The following persons shall not testify in certain respects: (A) an attorney, concerning a communication made to him by his client in that relation or his advice to his client, except that the attorney may testify by express consent of the client * * * and except that, if the client voluntarily testifies * * * the attorney may be compelled to testify on the same subject."

{¶ 23} However, the statute does not abrogate the common law. Waiver of the attorney-client privilege can still occur by implication.

{¶ 24} Before applying the *Hearn* test to the facts of this case to determine whether appellant impliedly waived the attorney-client privilege, it is necessary to understand the nature of the underlying action. Appellant argues that GH&R and Hirschfeld committed legal malpractice by assisting Schmidt in the manipulation of the assets of Garry's Plant Land as a result of negligently failing to include an anti-dilution clause in the stock redemption agreement and the stock option agreement.

{¶ 25} In order to establish a cause of action for legal malpractice based on negligent representation, the appellant must demonstrate that (1) the attorney owed a duty or obligation to the appellant, (2) there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus.

{¶ 26} In applying the *Hearn* test to the facts of this case, first we must determine whether the assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party. It is obvious that under the first factor of the test, the assertion of the attorney-client privilege is the result of an affirmative act on the part of appellant. In this case it was the filing of a malpractice suit alleging a conflict of interest.

{¶ 27} Under the second factor of the test, we must determine whether, through the affirmative action, the asserting party has placed the protected

information at issue by making it relevant to the case. By filing the suit, appellant has placed the question of whether appellant was communicating with other attorneys concerning this same subject matter. Whether those attorneys were advising him with respect to the issues involved, goes directly to the fundamental issues of whether GH&R and Hirschfeld owed a duty to appellant. Consequently, it is also material to GH&R's and Hirschfeld's defense of the malpractice allegation.

{¶ 28} Under the third factor of the *Hearn* test, we must determine whether application of the privilege would deny the opposing party access to information vital to its defense. If the application of the attorney-client privilege would deny GH&R's and Hirschfeld's access to information vital to their defense, the court should find that appellant had impliedly waived the privilege through his own affirmative conduct. "Vital information" necessarily implies that the information is unavailable from any other source. See *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.* (C.A.10, 1998), 136 F.3d 695.

{¶ 29} Information that would prove that appellant employed personal counsel to represent him would break the causal connection between the conduct complained of, the alleged malpractice resulting from the conflict of interest, and the resulting damage or loss to appellant. Therefore, the application of the attorney-client privilege would deny GH&R and Hirschfeld access to information vital to their defense. Since appellant holds the privilege to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice, the information cannot be obtained from any independent source other than appellant himself and the attorneys with whom he consulted. Therefore, under the *Hearn* test, appellant has impliedly waived the attorney-client privilege.

{¶ 30} Appellant argues that *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985, is the clear rule regarding waiver of the attorney-client privilege. The facts in *McDermott* can be distinguished from the facts in this case. John Lawrence was Jeffrey McDermott's attorney when the murder of Elmwood Poe McKnown occurred. Five years later, the state accused McDermott of McKnown's murder. The state subpoenaed Lawrence to testify at McDermott's trial regarding a conversation with McDermott immediately after the murder. McDermott had not consented to any disclosure by Lawrence.

{¶ 31} Obviously, McDermott was not asserting the attorney-client privilege as a result of some affirmative act. Appellant on the other hand has placed the protected information at issue as a result of affirmative act of filing the malpractice suit alleging a conflict of interest.

{¶ 32} Therefore, the trial court did not act unreasonably, arbitrarily, or unconscionably in applying the *Hearn* test to the facts of this case and in

determining that appellant impliedly waived the attorney-client privilege. The assignment of error is overruled.

Judgment affirmed.

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.

---

* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1440, 2002-Ohio-2110, 767 N.E.2d 272.