JACKSON, Appellant,

v.

GREGER et al., Appellees.

[Cite as *Jackson v. Greger,* 160 Ohio App.3d 258, 2005-Ohio-1588.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20693.

Decided April 1, 2005.

Kevin O'Brien, for appellant.

Brian D. Goldwasser and Holly Marie Wilson, for appellees.

---

WOLFF, Judge.

{¶ 1} Maudy Jackson appeals from an order of the Montgomery County Court of Common Pleas that granted the motion of Lawrence J. Greger, Sharon L. Ovington, and their law firm, Greger & Ovington (collectively, "the law firm") to compel discovery.

{¶ 2} According to Jackson's complaint, in June 1999, Jackson was charged with disorderly conduct, assault on a police officer, and resisting arrest after two Kettering police officers came to her home on a 911 hang-up call. Jackson retained Lawrence Greger of Greger & Ovington to represent her in the matter. After negotiations with the prosecutor, Greger advised Jackson to plead guilty to the resisting-arrest charge. On November 3, 1999, Jackson pleaded guilty to resisting arrest. The two remaining charges were apparently dismissed.

{¶ 3} On June 25, 2001, Jackson brought suit against the two Kettering police officers and the city of Kettering in the United States District Court for the Southern District of Ohio, Western Division, at Dayton, alleging that the officers had conducted an unlawful warrantless search, had unlawfully arrested her, had used excessive force during her arrest, and had failed to summon medical attention promptly, in violation of Section 1983, Title 42, U.S.Code. (Jackson also alleged that the officers had violated the Americans with Disabilities Act, Section 12101, Title 42, U.S.Code, et seq., and the Rehabilitation Act, Section 12134, Title 42, U.S.Code, by releasing her on a recognizance bond after discovering the extent of her injuries, so that Kettering would not be responsible for her medical expenses.) On November 2, 2001, the city and the officers filed their answer, which denied the claims and asserted 12 affirmative defenses, including collateral estoppel and res judicata.

{¶ 4} On January 24, 2003, the officers and the city filed a motion for summary judgment. In their motion, they argued that the Section 1983 claims were barred by the doctrine of collateral estoppel. In particular, they contended that Jackson's plea of guilty to the resisting-arrest charge in the Kettering Municipal Court precluded her from challenging the lawfulness of the search and her arrest and from alleging that the officers had used excessive force in the course of her arrest. The federal court agreed, and it granted the summary judgment motion on April 22, 2003. Jackson filed an appeal with the Sixth Circuit Court of Appeals. Before the case was briefed, Jackson reached a settlement with the city of Kettering.

{¶ 5} On July 11, 2003, Jackson initiated the instant litigation against the law firm, alleging that Greger had committed legal malpractice when he advised her to plead guilty to resisting arrest. Jackson alleged that she had repeatedly told Greger that she had suffered a serious injury due to the police officers' conduct (a broken neck that required a halo brace) and that she was contemplating a civil-rights/excessive-force action against the officers and the city of Kettering. She further alleged that Greger had failed to advise her that a guilty plea to resisting arrest would foreclose a subsequent civil-rights action.

{¶ 6} In December 2003, the law firm propounded interrogatories and requests for production of documents, including a request for "[a]ny and all communications and documents between Plaintiff and any of her attorneys retained to prosecute her interests in relation to the suit filed under 42 U.S.C. 1983, against Kettering Police Officers Jerome Csizma, Scott Drerup and the City of Kettering, Ohio, in the United States District Court for the Southern District of Ohio, Western Division, at Dayton, Case No. C3–01–261." When Jackson failed to respond, the law firm filed a motion to compel discovery. In his affidavit in support of the motion, the law firm's defense counsel acknowledged that some of the requested information might be privileged. He asserted, however, that the privilege had been waived by the filing of the suit and that the information was vital to the law firm's ability to defend against the action.

{¶ 7} On May 20, 2004, the law firm moved for sanctions against Jackson and again sought to compel discovery. It indicated that Jackson had not yet seen the discovery requests at the time of her deposition on May 13, 2004, and that she had been advised by her attorney not to answer deposition questions concerning her communications with her counsel regarding the Section 1983 action. On the same date, the law firm sought to disqualify Jackson's counsel, who had also been Jackson's attorney for the federal lawsuit. On June 7, 2004, the law firm filed a motion for summary judgment, arguing that Jackson's legal-malpractice action was barred by the statute of limitations and, alternatively, that Jackson could not establish her claim.

{¶ 8} A hearing on the pending motions was held on July 14, 2004. (The record does not include a transcript of that hearing.) On August 4, 2004, the trial court granted the motion to compel discovery, stating simply, "Upon consideration of the briefs and argument of counsel, this Court finds that Defendants' Motion is well taken." Recognizing that the production of documents and the questioning of witnesses would invade attorney-client privilege, the court certified its decision as a final, appealable order.

{¶ 9} Jackson raises two assignments of error on appeal.

{¶ 10} "I. The trial court erred as a matter of law by ordering plaintiff to produce documents and allow the questioning of witnesses over her attorney's

objection of attorney-client privilege (entry and order granting defendant's motion to compel, August 4, 2004)."

{¶ 11} In her first assignment of error, Jackson claims that the trial court erred in compelling her to provide documents and to answer questions concerning her federal civil-rights action on the ground that such documents and information are protected by attorney-client privilege.

{¶ 12} The attorney-client privilege is set forth in R.C. 2317.02(A). The statute provides:

{¶ 13} "An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, [shall not testify] except that the attorney may testify by express consent of the client * * * and except that, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject."

{¶ 14} "The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice. * * * Thus, the attorney-client privilege belongs to the client, and the only materials protected are those which involve communications with his attorney." *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 329, 612 N.E.2d 442.

{¶ 15} "Although the language of R.C. 2317.02(A) speaks only to the prohibition of testimony of privileged matters, it has nonetheless been stated that wherever a claim of privilege would be proper at the actual trial of the case, it is proper at the discovery stage. 36 Ohio Jurisprudence 3d (1982), Discovery and Depositions, Section 33. Because the same rules of privilege govern the scope of discovery as govern admissibility at trial, a party may obtain pretrial discovery of privileged materials only if such materials fall within some exception to the privilege or if the privilege will be waived at trial." *Schaefer*, 82 Ohio App.3d at 328–29, 612 N.E.2d 442.

{¶ 16} In *Schaefer*, we adopted a tripartite test for determining whether the attorney-client privilege has been waived when privileged communications relating to a prior litigation are at issue in a subsequent lawsuit. Under that test, first espoused in *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574, the attorney-client privilege is deemed waived by the asserting party if (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party, (2) through the affirmative action, the asserting party has placed *the protected information* at issue by making it relevant to the case, and (3)

application of the privilege would deny the opposing party access to information vital to its defense. *Schaefer*, 82 Ohio App.3d at 330, 612 N.E.2d 442. (Emphasis sic.) For purposes of this opinion, we will assume, arguendo, that the first prong has been met.

{¶ 17} With regard to the second prong, the law firm claims that the protected information is relevant to the case because the legal-malpractice action "is solely based upon the outcome of the civil rights action." It asserts that "the facts of the case, the settlement negotiations, the issue of estoppel, and Attorney O'Brien's understanding of the challenges of the suit given Jackson's prior plea bargain are absolutely the central issue of this case."

{¶ 18} Jackson acknowledges that she has waived the attorney-client privilege regarding her communications with Greger in her criminal case. She disputes, however, that she has likewise placed her privileged communications regarding her Section 1983 action at issue. She states that the malpractice of which she complains occurred in the criminal matter and that such malpractice merely manifested itself when her civil-rights action was dismissed on April 22, 2003. Jackson essentially argues that it was the law firm's defense strategy of challenging the legal-malpractice claim on statute-of-limitations grounds that made those communications relevant and that relevance to a defense strategy is insufficient to satisfy the second prong of the *Hearn* test.

{¶ 19} In support of her argument, Jackson cites our analysis of the second prong in *Schaefer*. In *Schaefer*, an employer (Schaefer) sued its insurance agent (Noggle) for failing to recommend that the company purchase a stopgap endorsement to its general liability insurance after the company's insurer received a judgment that an employee's intentional-tort claim was not covered by its policy. In that case, we stated:

{¶ 20} "In filing the suit against Noggle, Schaefer called into question the issues of whether Noggle violated the standard of care required of an insurance agent when he failed to recommend that Schaefer purchase stopgap insurance and whether that failure was the proximate cause of its settlement with Bourelle [Schaefer's employee]. Related to the issue of proximate cause were the questions of whether the settlement was necessary and/or reasonable. Thus, it could be said that in filing the suit, Schaefer made the determination of the propriety of the settlement a relevant issue in the case. However, this did not necessarily make the protected information relevant to the case. In defending this case, Noggle needed only to establish that the settlement was not reasonable in order to disprove Schaefer's claim that Noggle's failure to recommend stopgap insurance was the proximate cause of its settlement with Bourelle. Whether Schaefer's attorney's advice was reasonable only became an issue when Noggle chose to challenge the settlement by means of attacking the advice given by Schaefer's

attorney. *Thus, it was Noggle's, and not Schaefer's, actions which made the privileged information relevant to the case. The privilege belongs to the client, and it would be improper to deem it waived on the basis of the defense strategies of the client's adversary.* Hence, we find that the second prong of the *Hearn* approach has not been satisfied." (Emphasis added.) Id. at 331–32, 612 N.E.2d 442.

{¶ 21} We agree with Jackson that, like the employer in *Schaefer*, she did not put her privileged communications from her civil-rights action at issue. In order to prevail on her claim against the law firm, Jackson must demonstrate "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus. Although the dismissal of the civil-rights action prompted Jackson to file suit against the law firm for legal malpractice in her prior criminal case, it is Greger's actions in her criminal case that were placed at issue. Her privileged communications from her federal action are not relevant to the elements of her malpractice claim except, perhaps, as to whether her settlement with the city of Kettering was reasonable, an issue related to damages. That her privileged communications may be useful to the law firm's statute-of-limitations defense is irrelevant. As we stated in *Schaefer*, the party asserting privilege does not place protected materials in issue merely because the protected materials may be useful to the opposing party's defense. Accordingly, the law firm has not satisfied the second prong of the *Hearn* test.

{¶ 22} Although we will not delve deeply into the third prong, we also find that the privileged communications are not vital to the law firm. " 'Vital information' necessarily implies that the information is unavailable from any other source." *Ward v. Graydon, Head & Ritchey* (2001), 147 Ohio App.3d 325, 332, 770 N.E.2d 613; *H & D Steel Serv., Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), Cuyahoga App. No. 72758, 1998 WL 413772. In other words, to be vital, the information must be available only from the party asserting the privilege and the attorneys with whom that party had consulted.

{¶ 23} The law firm asserts that it is unable to defend itself against Jackson's action without the privileged communications. It cites the affidavit of Brian Goldwasser, its trial attorney, in which he stated that "information regarding Jackson's settlement with the City of Kettering and discussions she had with her attorney as part of her lawsuit against the City were crucial to his understanding of the facts and basis for Jackson's claims against Defendants." He further stated that "Jackson's and her counsel's understanding of the implications of her prior guilty plea are also critical to Defendants' ability to pursue its statute of

limitations defense." The law firm contends that "there is absolutely no other source of information by which Defendants can establish when Jackson's cause of action against them ripened."

{¶ 24} Jackson asserts that the information sought by her former counsel is readily available from other sources, particularly from the pleadings filed in the Section 1983 action. She further asserts that they could depose the Kettering police officers, Kettering officials, or their defense counsel to learn more about that civil litigation. Jackson also notes that if the malpractice defendants believe that her settlement of the Section 1983 action was inappropriate, they may challenge the settlement by means of expert testimony. As for the statute-of-limitations defense, Jackson asserts that her legal-malpractice cause of action accrued when the claims were dismissed on collateral-estoppel grounds by the federal court. Thus, she argues that access to privileged communications is unnecessary to establish whether her legal-malpractice action had been timely filed.

{¶ 25} We see no basis for the law firm to delve into privileged communications in order to understand the facts and basis for Jackson's claims against it. It is apparent from the pleadings in the instant litigation, as well as the federal civil action, that Jackson has claimed that Greger committed legal malpractice when he advised her to plead guilty to resisting arrest while knowing that she intended to bring a civil action challenging the lawfulness of her arrest and the force used by the police officers. The federal court's summary-judgment ruling, which is a public record, indicates that her Section 1983 claims against the officers were foreclosed by her prior guilty plea under the doctrine of collateral estoppel. Additional information about the bases for her federal action is set forth in the pleadings and motions in that action. Certainly, the privileged communications between Jackson and her counsel in the Section 1983 action are not vital to gaining an understanding of the facts and bases of Jackson's claims in her civil-rights action.

{¶ 26} Moreover, as argued by Jackson, the law firm need not obtain privileged communications in order to establish that Jackson's settlement of the federal action was unreasonable. As we stated in *Schaefer*, an attorney expert could quite effectively examine the facts of the case and applicable case law to determine whether Jackson should have settled the action for the agreed amount or for any amount. *Schaefer*, 82 Ohio App.3d at 332, 612 N.E.2d 442.

{¶ 27} With regard to the statute of limitations, we recognize that the federal court's summary-judgment ruling may not be the earliest "cognizable event" triggering the statute of limitations and that the privileged communications may be useful in determining whether Jackson's cause of action accrued prior to that date. See R.C. 2305.11(A); *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus. However, the law firm is free to ask Jackson,

without delving into privileged communications, when she first learned that Greger might have committed a negligent act during his representation of her. In other words, the law firm may ask Jackson when she first learned that her guilty plea might have impaired her ability to pursue her claim against the city of Kettering and the police officers. Thus, the third *Hearn* prong likewise has not been satisfied.

{¶ 28} Because the second and third prongs of the *Hearn* test have not been met, the trial court erred in compelling the discovery of attorney-client communications from the federal civil-rights action.

{¶ 29} The first assignment of error is sustained.

{¶ 30} "II. The trial court erred as a matter of law by ordering plaintiff to produce documents and allow the questioning of witnesses over her attorney's objection of work product doctrine (entry and order granting defendant's motion to compel, August 4, 2004)."

{¶ 31} In her second assignment of error, Jackson claims that the trial court erred in compelling her to provide the law firm with her attorney's work product in the federal action.

{¶ 32} Civ.R. 26(B)(3) codifies what is commonly referred to as the work-product doctrine. It states: "[A] party may obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney * * *) only upon a showing of good cause therefor." Unlike the attorney-client privilege, which belongs to the client, "[t]he work-product doctrine * * * belongs to the attorney and assures him that his private files shall remain free from intrusions of opposing counsel in the absence of special circumstances. The work-product doctrine generally protects a broader range of materials than does the attorney-client privilege because the work-product doctrine protects all materials prepared in anticipation of trial." (Citations omitted.) *Schaefer*, 82 Ohio App.3d at 329, 612 N.E.2d 442.

{¶ 33} There are two kinds of work product:

{¶ 34} "Ordinary fact or 'unprivileged fact' work product, such as witness statements and underlying facts, receives lesser protection. Written or oral information transmitted to the attorney and recorded as conveyed may be compelled upon a showing of good cause by the subpoenaing party. 'Good cause,' as set forth in Civ.R. 26(B)(3), requires a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship.

{¶ 35} "The other type of work product is 'opinion work product,' which reflects the attorney's mental impressions, opinions, conclusions, judgments, or

legal theories. \* \* \* Because opinion work product concerns the mental processes of the attorney, not discoverable fact, opinion work product receives near absolute protection. \* \* \* Notes made by the attorney or his agents that record the witness's statement, but that also convey the impressions of the interviewer, are protected as opinion work product, because such notes reveal the attorney's or agent's thoughts." (Citations omitted.) *State v. Hoop* (1999), 134 Ohio App.3d 627, 642, 731 N.E.2d 1177; see *State v. Today's Bookstore, Inc.* (1993), 86 Ohio App.3d 810, 621 N.E.2d 1283.

{¶ 36} In *Schaefer*, we applied three considerations to determine whether work product prepared during a prior litigation is protected by the work-product doctrine. Those three considerations are (1) whether the work product prepared in anticipation of the past litigation is closely related to the present litigation, (2) whether permitting discovery of work product in subsequent cases would result in a chilling effect on the performance of attorneys preparing for litigation, and (3) whether the work product in past litigation consists of material that is directly at issue in the present litigation. Id. at 334, 612 N.E.2d 442. The third element basically constitutes waiver of the work-product doctrine. Id. "Once it is determined that the work product sought to be discovered is directly at issue, it is deemed discoverable regardless of the other considerations of related cases and chilling effect. It is within the context of examining whether work product is directly at issue in any particular case that the *Hearn* approach becomes necessary." Id.

{¶ 37} Applying the three considerations, we first conclude that the prior federal litigation is closely related to this malpractice action. Because the civil-rights claims were dismissed on collateral-estoppel grounds, it was probable that Jackson would contemplate a lawsuit against her former criminal defense attorney based on his failure to advise her that her guilty plea may foreclose her civil action. However, we further find that the disclosure of work product materials would have a chilling effect on the performance of Jackson's attorney preparing for litigation. As with the privileged communications, we also find that Jackson's attorney's work product in the federal case was not placed at issue by the filing of this litigation. Thus, the trial court erred in compelling the discovery of such materials.

{¶ 38} The second assignment of error is sustained.

{¶ 39} The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and GRADY, J., concur.