McMAHON, Appellant,

v.

SHUMAKER, LOOP & KENDRICK, LLP, Appellee.

[Cite as McMahon v. Shumaker, Loop & Kendrick, LLP, 162 Ohio App.3d 739, 2005-Ohio-4436.]

Court of Appeals of Ohio,
Sixth District, Wood County.

Nos. L–04–1324 and L–04–1362.

Decided Aug. 26, 2005.

740

Joel Levin, Erika Bailey Drake, Aparesh Paul, and Niki Z. Schwartz, for appellant.

James D. Caruso and W. David Arnold, for appellee.

PIETRYKOWSKI, Judge.

{¶ 1} This legal-malpractice case is before the court upon a consolidated appeal from orders of the Lucas County Court of Common Pleas, compelling the production of certain documents and awarding attorney fees to appellee, Shumaker, Loop & Kendrick, LLP.

{¶ 2} The instant case arises out of appellee's legal representation of appellant and Ramco Spring Meadows Associates, a partnership in which appellant, Brian McMahon, was a general partner. In turn, Spring Meadows Shopping Center Associates, a general partnership, was comprised of Ramco Spring Meadows Associates and JCP Realty, Inc. In early 1996, some of the partners allegedly amended the Spring Meadows Shopping Center Associates partnership agreement and transferred partnership property into a Real Estate Investment Trust ("REIT") without appellant's knowledge or consent. In underlying litigation filed in August 2002, appellant asserted that the general partners breached the Ramco Spring Meadows Associates partnership agreement, and as a result, appellant suffered damages. In that underlying litigation, appellant was represented by the law firm Spengler Nathanson.

{¶ 3} On August 20, 2003, appellant filed the present legal-malpractice complaint against appellee. In his complaint, appellant asserted claims of legal malpractice, breach of fiduciary duty, negligent misrepresentation, and fraud.

{¶ 4} On July 27, 2004, appellant's deposition was taken. In his deposition, appellant testified that without first reviewing a document or opinion provided to him by Spengler Nathanson, he could not fully answer certain questions relative to his asserted rights in the underlying litigation regarding participation in decisions affecting the partnership. Appellant also testified that he could not pinpoint when he initially consulted an attorney relative to his concerns about the transactions at issue without referencing some documents in his file.

{¶ 5} On July 28, 2004, appellee sent a letter requesting nine classes of documents, including the foregoing two classes of documents to which appellant referred in his deposition. Appellee subsequently filed a motion to compel production of these documents, and appellant filed a brief in opposition. On

October 7, 2004, the trial court signed an order and judgment entry drafted by appellee's counsel that contained no analysis of the privilege issues raised by appellant. In the order, with reference to the July 28, 2004 letter, the trial court ordered appellant to provide the following to appellee:

{¶ 6} "Any written opinion from Spengler Nathanson or anyone else concerning the need to obtain the consent of all of the individual partners in Ramco Spring Meadows Associates prior to any sale or transfer of the Spring Meadows property;

{¶ 7} " * * *

{¶ 8} "Any document that reflects whether [appellant] consulted any legal or accounting professional concerning Spring Meadows or REIT issues in the months immediately following the formation of the REIT in 1996."

{¶ 9} In this October 7, 2004 order, the trial court also ordered appellant to pay to appellee all fees and costs that appellee incurred in pursuing the nine requested classes of documents. The trial court also ordered appellee to submit a verified statement of those costs and fees within 15 days of the order. The trial court also stated that appellant would have ten days to object to any specific entry on that statement. On November 8, 2004, appellant filed his notice of appeal on this order.

{¶ 10} On November 10, 2004, the trial court again executed an order and judgment entry drafted by appellee's counsel. Upon appellee's apparent filing of its verified statement of costs and fees, the trial court ordered appellant to pay the sum of $4,008.

{¶ 11} In his first assignment of error, appellant contends that the trial court abused its discretion when it granted a motion to compel production of these particular documents because they are privileged. In his second assignment of error, appellant contends that "[t]he trial court committed reversible error when it granted [a]ppellee's motion for attorney fees without a hearing, and the application was baseless."

{¶ 12} It is well settled that trial courts enjoy considerable discretion in the regulation of discovery proceedings. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. Therefore, "absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." *State ex rel. The v. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198. Likewise, "[a]n award of attorney fees is a matter within the sound discretion of the trial court." *Smith v. Baumgartner* (Jan. 25, 2002), 6th Dist. Nos. OT–01–018 and OT–01–014, 2002 WL 107767 quoting *Layne v. Layne* (1992), 83 Ohio App.3d 559, 568, 615 N.E.2d 332. Further, we have held as specific to review of an award associated with Civ.R. 37 sanctions that "the

function of the appellate court is to determine whether the trial court abused its discretion when the trial court either denied or granted the imposition of sanctions and costs." *Salmond v. Owens–Illinois, Inc.* (Apr. 26, 1985), 6th Dist. No. L–84–229, 1985 WL 7106. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 13} Regarding the first assignment of error, appellant claims both attorney-client privilege that was not waived and work-product privilege for which the requisite in camera inspection was not conducted. First, we will address the arguments relative to the attorney-client privilege. Appellee does not contest that the documents at issue are generally subject to the attorney-client privilege. Rather, appellee claims that appellant waived the attorney-client privilege relative to these documents. Specifically, appellee contends that under the subject-matter waiver doctrine, by multiple references to the documents during his deposition testimony, appellant has put the documents at issue. Appellee cites *Ward v. Graydon, Head & Ritchey* (2001), 147 Ohio App.3d 325, 770 N.E.2d 613. In reply, appellant argues that his limited reference to the documents did not waive his attorney-client privilege. In particular, appellant asserts that the information sought regards a separate underlying litigation between appellant and his business partners not at issue in the instant legal-malpractice claim, and the information is available to appellee by other means.

{¶ 14} In *Ward,* a case similar to the present case, the allegedly privileged information was sought in the context of a legal-malpractice action. Specifically, the appellee had sought the deposition testimony of counsel who apparently had represented the appellant during some of the period that the appellee also represented the appellant and his partner. The Twelfth District Court of Appeals applied the tripartite test for implied waiver of privilege espoused in *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574, to its review of the trial court's order compelling the testimony of appellant's prior counsel. In *Ward,* specifically with regard to the first *Hearn* factor, the court found that the assertion of the attorney-client privilege was the result of the appellant's affirmative act of filing a malpractice suit alleging a conflict of interest. Regarding the second factor, the court found that by filing the suit, the appellant had placed at issue the question of whether he was communicating with other attorneys and, thus, whether these attorneys were advising him with respect to the issues involved. The court found that whether he got such advice went directly to the fundamental issues of whether the appellee-defendant counsel owed a duty to the appellant. Finally, concerning the third factor, the court found that the application of the attorney-client privilege would deny the appellee access to information vital to their

defense, and the information could not be obtained from any independent source. The court concluded that as a result of the affirmative act of filing a legal-malpractice suit alleging a conflict of interest, the appellant impliedly waived the attorney-client privilege.

{¶ 15} First, we note that similar to the court's holding in *Ward*, this court also has applied the *Hearn* test to a claimed waiver of attorney-client privilege. See *First Union Natl. Bank of Delaware v. Maenle*, 162 Ohio App.3d 479, 2005-Ohio-4021, 833 N.E.2d 1279. Thus, we will apply it to the present case. Under *Hearn*, a party impliedly waives the attorney-client privilege through its own affirmative conduct if (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party, (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case, and (3) application of the privilege would deny the opposing party access to information vital to its defense. *Hearn*, 68 F.R.D. at 581.

{¶ 16} Regarding the first factor from *Hearn*, clearly, as in *Ward*, the assertion of the privilege is the result of appellant's affirmative act of filing his legal-malpractice suit. However, regarding the second factor, in contrast to *Ward*, appellant's deposition does not raise any issue of concurrent legal representation during the time of the alleged injury to appellant. Appellant's legal-malpractice claim arises out of appellee's alleged omissions when the 1996 REIT and partnership amendments took place without notice to appellant. In his deposition, appellant may have been uncertain as to when he initially sought after-the-fact legal advice regarding his rights relative to the REIT and the amendments. But appellant indicated that no one other than appellee served as counsel or advised him regarding the Ramco Spring Meadows Associates partnership through the time of the 1996 transactions at issue. Therefore, appellant did not place at issue the compelled documents reflecting whether he consulted any legal or accounting professional concerning Spring Meadows or REIT in the months immediately following the formation of the REIT in 1996.

{¶ 17} Regarding the third factor from *Hearn*, specifically with regard to the compelled opinion of Spengler Nathanson, appellant argues that the information sought is available by other means, such as an expert opinion on the various partnership agreements. Such an alternative route to the sought information was suggested by the courts in *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency* (1992), 82 Ohio App.3d 322, 332, 612 N.E.2d 442 and *H & D Steel Serv., Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), 8th Dist. No. 72758, 1998 WL 413772. Specifically, in *H & D Steel*, in the context of discovery in a legal-malpractice action, the appellee law firm sought a letter from the

successor counsel in appellant's underlying secured-debt action. The court found that since the appellee law firm's alleged negligence in preparing documents necessary to secure appellant's debt was already complete at the time of the underlying action, the successor counsel's involvement did not in any way encroach upon the legal services rendered by the appellee law firm. Id. Therefore, the court found that the information sought was not vital to the appellee law firm's defense. Id. The court further determined that while the information contained in the letter at issue, if obtained, may have affected the appellee law firm's strategy, it bore little relation to its ability to adequately defend the legal-malpractice action. Id. Finally, the court noted that the appellant had to prove the reasonableness of the settlement in the underlying action, in all likelihood through the use of expert testimony. Id. The appellee law firm would then have the potential to uncover the operative facts upon which the expert's opinion is based and that would satisfy its burden of proving the appellant's alleged failure to mitigate damages without invading the sanctity of the attorney-client privilege. Id.

{¶ 18} Similar to *H & D Steel*, in the present case, since appellee's alleged negligence in failing to notify appellant of the REIT or partnership amendments was already complete at the time of the underlying action, Spengler Nathanson's involvement did not in any way encroach upon the legal services rendered by appellee. Further, similar to *H & D Steel*, while the information contained in the letter at issue, if obtained, might affect appellee's strategy, it bears little relation to its ability to adequately defend the legal-malpractice action. Appellant still must prove the reasonableness of his settlement in the underlying action against his partners, in all likelihood through the use of expert testimony. Appellee would then have the potential to uncover the operative facts upon which the expert's opinion is based, and that would satisfy its burden of proving appellant's alleged failure to mitigate damages without invading the sanctity of the attorney-client privilege. Further, we note that the party asserting privilege does not place protected materials in issue merely because the protected materials may be useful to the opposing party's defense. *Jackson v. Greger*, 160 Ohio App.3d 258, 2005-Ohio-1588, 826 N.E.2d 900, ¶ 21 citing *Schaefer*.

{¶ 19} Based on the foregoing, we conclude that appellant did not waive his attorney-client privilege related to the documents specified in appellant's assignments of error. Based on this finding, appellant's arguments relative to the work-product privilege are moot, and the court will not address them. Further, we find that the trial court abused its discretion in granting appellee's motion to compel production of the documents specified in appellant's assignments of error.

{¶ 20} Relative to appellant's second assignment of error regarding his alleged right to a hearing on attorney fees, the court notes that the language of

Civ.R. 37(A)(4) provides that whether a motion to compel is granted or denied, "the court shall, after opportunity for hearing," make an order relative to the reasonable expenses, including attorney fees, involved in the contested discovery matter. Under the specific facts of the present case, where only two out of nine classes of compelled documents were challenged on appeal and were found to be privileged, we find that a hearing on attorney fees is necessary. In the present case, the trial court cannot make a meaningful determination on attorney fees without a hearing.

{¶ 21} Based on the foregoing, we find appellant's assignments of error well taken. Accordingly, the judgment of the Lucas County Court of Common Pleas is reversed to the extent that it compelled production of the documents specified in appellant's assignments of error and ordered appellant to pay attorney fees. Further, the judgment is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal, for which sum judgment is rendered against appellee on behalf of Lucas County, and for which execution is awarded. See App.R. 24.

Judgment reversed
and cause remanded.

SHOW and PARISH, JJ., concur.