DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Advanced Elastomer Systems, L.P. ("AES"), appeals from the trial court's decision granting Appellees' motion to compel documents and testimony. This Court affirms.
 I. {¶ 2} On August 10, 2003, Appellee, Rick Harpster, lost his right hand while operating a ribbon blender at AES' plant in Wadsworth, Ohio. Appellee and his wife commenced this action on July 7, 2004. Throughout the course of discovery, Appellees deposed ten AES employees. During the depositions, Appellees learned that AES had initiated an investigation of the accident within hours of the incident. At each of the depositions, AES' counsel instructed its employees not to answer questions concerning the details of their investigation. Specifically, the employees were instructed not to answer questions regarding (1) the matters investigated, (2) the witnesses interviewed in the course of the investigation, (3) the statements of the witnesses interviewed, (4) the documents that were collected and reviewed in the course of the investigation, (5) tests or experiments performed on the subject machinery, (6) any outside consultants or experts employed in the course of the investigation and his/her conclusions, (7) the subject of any photographs taken and (8) the conclusions or results of the investigation. AES maintained that its investigation was protected from discovery by the attorney-client privilege and/or the work-product doctrine.
 {¶ 3} Appellees also requested that AES produce documents related to the investigation including the following:
(a) all statements taken from any employee of Defendant, AES;
(b) all statements taken by AES of any persons (including employees of AES) in any way relating to the incident; the incident investigation; the microswitch; the ribbon blender; the boot; the alteration and/or defeat of the microswitch; prior problems with the microswitch, boot and/or ribbon blender; and the cause or causes of the incident;
(c) any photographs taken on and subsequent to August 10, 2003;
(d) any testing of and/or experiments to the ribbon blender, the microswitch and/or boot on and after August 10, 2003;
(e) any preliminary and/or final incident investigation reports, including but not limited to conclusions as to the causes or contributing factors to the incident;
(f) any notes authored by any incident investigation investigators.
 {¶ 4} AES objected to this request for production of documents on the grounds that the information was protected by both the work product doctrine and the attorney-client privilege, that the information was not relevant and that the request was overly broad and unduly burdensome. Appellees filed a motion to compel the disputed discovery. AES then filed a brief in opposition in which it requested that the court conduct an in camera hearing or inspection to determine whether any privilege or protection applies to the information requested. The trial court declined this request and granted Appellees' motion. AES timely appealed raising two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED BY GRANTING [APPELLEES'] MOTION TO COMPEL, PERMITTING [APPELLEES] TO QUESTION AES' EMPLOYEES AND TO OBTAIN DOCUMENTS AND INFORMATION PROTECTED BY THE WORK PRODUCT DOCTRINE AND THE ATTORNEY-CLIENT PRIVILEGE."
 {¶ 5} In AES' first assignment of error, they contend that the trial court erred in granting Appellees' motion to compel because the documents and testimony at issue are protected by the work product doctrine and the attorney-client privilege. We disagree.
 {¶ 6} Absent an abuse of discretion, a reviewing court must affirm a trial court's disposition of discovery issues. State exrel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469. An abuse of discretion is more than an error of judgment, but instead connotes "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. "For a party seeking to overturn the lower court's discovery ruling, the aggrieved party must present evidence that the lower court's actions were `unreasonable, arbitrary, or unconscionable.'" Perfection Corp.v. Travelers Cas. Sur., 153 Ohio App.3d 28, 36,2003-Ohio-2750, at ¶ 9; See Blakemore v. Blakemore (1983),5 Ohio St.3d 217. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. at 219.
 {¶ 7} Civ.R. 26(B) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" (Emphasis added.) Generally, communications between an attorney and his or her client are privileged. See R.C. 2317.02(A). The term "client," as used in R.C. 2317.02(A), includes:
"a person, firm, partnership, corporation, or other association that, directly or through any representative, consults an attorney for the purpose of retaining the attorney or securing legal service or advice from him in his professional capacity, or consults an attorney employee for legal service or advice, and who communicates, either directly or through an agent, employee, or other representative, with such attorney[.]" R.C. 2317.021.
 {¶ 8} Barring application of a privilege, a party may, in general, request discovery of any relevant matter. Civ.R. 26(B)(1). Trial preparation materials, also called attorney work product, encompass material prepared in anticipation of litigation by a party or a party's representative and are discoverable only upon a showing of good cause. Civ.R. 26(B)(3). "Good cause," as set forth in Civ.R. 26(B)(3),
"requires a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship." Jackson v. Greger,160 Ohio App.3d 258, 2005-Ohio-1588, at ¶ 34.
Work Product Doctrine
 {¶ 9} With regard to the work product privilege, AES contends that its investigation was conducted in anticipation of litigation and, therefore, is protected from discovery. AES specifically argues that documents can be both produced as part of a standard investigation and also constitute attorney work product created in anticipation of litigation. Further, AES contests the trial court's failure to consider the affidavit from AES' general counsel in which he testified that he ordered the investigation immediately after the accident and instructed the investigation team, which was led by an Exxon-Mobil employee, to report to him. AES also argues that Appellees have failed to demonstrate "good cause" as to why the documents should be produced.
 {¶ 10} The trial court found that, as specifically stated in AES' correspondence to Appellees, AES' post-incident investigation and the documents they sought to discover were prepared and/or gathered in the ordinary course of business rather than in preparation for litigation. The court found, therefore, that the documents did not constitute the attorneys' work product. The court was persuaded by evidence that the investigation was initiated immediately following the incident and a year before this action was instituted and, by AES' admission, "was a standard practice designed for the safety of its employees." Consequently, the court held that the information obtained from the investigation did not constitute the attorneys' work product and that Appellees were not, therefore, required to establish good cause.
 {¶ 11} Further, the court found that even if AES had gathered the disputed discovery in anticipation of litigation, Appellees had actually established "good cause" for its discovery. The court based its "good cause" finding on the fact that (1) AES had prohibited Appellees from obtaining information regarding the investigation from the ten AES employees they had deposed, (2) no other source existed from which Appellees could obtain this information and (3) there was an inequality of investigative opportunity.
 {¶ 12} Upon review of AES' conduct following the accident, we find that the disputed information is not protected by the work product doctrine. We are persuaded by evidence that, up until this action was commenced, AES claimed that the investigation was conducted for the safety of its employees and insisted that the investigation was not conducted in preparation for litigation. In an August 14, 2003 letter from AES Plant Manager Lynn Rossmeissl to Appellee regarding Appellee's participation in the investigation, AES pled for his cooperation, stating:
"Most importantly, we must conclude this investigation in as timely a manner as possible so that the information obtained is complete and accurate and the results can be used in as expeditious a manner as possible for the safety of employees throughout the Company."
In fact, AES specifically stated that they did not want to make the investigation adversarial and that there was, therefore, no reason for Appellee to involve his attorney:
"What I do not understand is your insistence that we work through your attorney with regard to our conducting this portion of our investigation. You are certainly entitled to retain an attorney for any reason at any time, but you must understand that it is not the Company's policy to involve any outside parties, attorneys or otherwise, in the internal investigation of matters such as this. We do not want to make this process adversarial. The intention of the investigatory process is to gather the facts as quickly and accurately as possible and take actions based upon the findings from the investigation to most effectively protect the Company's employees who may be working on similar equipment or are involved in similar processes."
In addition, AES' general counsel, Michael Kaluza, sent a letter to Appellee's counsel on August 21, 2003 in which he reiterated the message from the August 14 letter:
"Mr. Harpster failed to cooperate in the investigation of this incident by refusing on a number of occasions to be interviewed. It is our standard practice to investigate accidents and one critical aspect of any investigation is the interviewing of all parties with knowledge of the incident. Mr. Harpster is well aware of our expectations in this regard. In fact, an employee's refusal to cooperate during an investigation will lead to discipline up to and including discharge.
"* * *
"Mr. Harpster has no constitutional right for counsel to be present during an investigatory interview. Nor do our procedures provide for an employee's counsel to be present during an investigatory interview."
 {¶ 13} An examination of these letters reveals that AES framed its investigation as anything but an investigation conducted in preparation of litigation. As a result of AES' correspondence, Appellee agreed to be interviewed. AES cannot shroud its investigation as a routine process and then later contend that the entire investigation was conducted in anticipation of litigation so that it can avoid turning over the information that it obtained.
 {¶ 14} Even if AES' general counsel requested that AES investigate the accident, AES has not demonstrated that its general counsel directed the investigation, that the disputed information actually contains AES' attorney's mental processes or that the documents were prepared by the attorney or at the attorney's request. Jackson, supra, at ¶ 35 (attorney's mental impressions, opinions, conclusions, judgments, or legal theories receive nearly absolute protection because they contain the mental processes of the attorney). Otherwise discoverable information does not become privileged through the act of turning over the information to one's attorney. Nord v. McMillan
(1966), 6 Ohio Misc. 25, 33; In re Keough (1949),151 Ohio St. 307, paragraph three of the syllabus. According to AES' August 21, 2003 correspondence, it is AES' standard practice to investigate an accident. Consequently, it is not even clear that AES' counsel had to request the investigation or provide any guidance regarding the investigation, as AES would have conducted it anyway. In AES' own words, such an investigation is their "standard practice."
 {¶ 15} Any allegation that the trial court failed to consider the general counsel's affidavit is mere conjecture. There is not sufficient evidence in the record below to indicate that the trial court failed to review the supplemental affidavit, as the trial court's order acknowledges one of the statements contained in the affidavit (i.e. that the information was later turned over to AES' general counsel). Thus it does not appear that the trial court chose to ignore the affidavit as AES suggests. SeeMontgomery v. John Doe 26 (2000), 141 Ohio App.3d 242, 254
(concluding that the evidence in the record did not support the defendant's contention that the trial court failed to examine all appropriate materials filed by defendant).
 {¶ 16} We find, further, that even if AES' investigation was conducted in anticipation of litigation, as alleged in the affidavit, Appellees have demonstrated good cause for obtaining the disputed information. AES instructed its employees to refuse to answer questions regarding their investigation and refused to produce any documents pertaining to any actions taken by AES or its employees after the accident. This disputed information is vital to Appellee's case as such information will enable him to evaluate AES' perception of the accident and support his tort claims. Although Appellee was eventually allowed to inspect the machine, Appellee had no other viable option for obtaining information regarding the actual investigation. See Jackson,
supra, at ¶ 34.
 {¶ 17} We find that the trial court did not abuse its discretion in determining that this information was not protected from discovery by the attorney work product privilege.
Attorney-Client Privilege
 {¶ 18} Next, AES asserts that its documents and information are protected by the attorney-client privilege because all the information gathered was later turned over to its General Counsel so that he could provide legal advice to AES and its officers and assist outside counsel in the defense of litigation.
 {¶ 19} The trial court found that AES failed to establish how the attorney-client privilege shielded this information from discovery. The court was again persuaded by the correspondence from AES to Appellees in which AES (1) assured Appellees that the investigation was conducted by an "Exxon-Mobil employee," and not legal counsel and/or under the guidance of legal counsel, (2) discouraged and restricted Appellees' counsel from involvement and (3) threatened that Appellee would be discharged if he failed to cooperate. No in camera inspection or hearing with respect to the requested documents was conducted as the court found that AES failed to cite any authority that bound the court to conduct such a hearing.
 {¶ 20} "Application of a privilege is not automatic."Chuparkoff v. Farmers Ins. of Columbus, Inc. 9th Dist. No. 22083, 2004-Ohio-7185, at ¶ 9, citing McPherson v. Goodyear Tire Rubber Co. (2001), 146 Ohio App.3d 441, 444. Where a party claims privilege in response to a discovery request, "the party asserting the privilege is required to identify those parts to which it was objecting and the reasons for each objection."McPherson, 146 Ohio App.3d at 444; See Amcast Indus. Corp. v.Detrex Corp. (N.D. Ind. 1991), 138 F.R.D. 115, 121 ("A party resisting or objecting to a document request under a claim of privilege will usually be required to identify and list all documents which it seeks to withhold[.]"); WillemijnHoudstermaatschaapij BV v. Apollo Computer, Inc. (D.Del. 1989),707 F.Supp. 1429, 1439 (stating that a party claiming attorney-client privilege and work product immunity is not excused from explicitly identifying the allegedly privileged items).
 {¶ 21} In its response to Appellees' discovery requests, AES failed to corroborate its blanket assertion that the documents contained attorney-client privileged materials. See Id. (holding that Appellant failed to demonstrate that the disputed information was protected by the attorney-client or work product privileges where he neither listed the documents he deemed privileged nor corroborated his blanket assertion that the documents were privileged). Further, AES failed to establish that the investigation was actually conducted and/or directed by their counsel as their letters to Appellee indicated that the investigation was conducted by "an Exxon-Mobil employee." AES has not pointed to specific information that constitutes communications between their attorney and their employees and has merely relied on the assertion that every document and tidbit of information gleaned after the accident is privileged because it was turned over to their counsel. The law in Ohio does not support their contention.
 {¶ 22} In addition, we find that AES acted in complete contravention of public policy when it first insisted that the investigation was conducted in the course of ordinary business and then, after the complaint was filed and AES had obtained information from Appellee, completely changed its position and asserted that the disputed information was privileged. SeePerfection Corp., supra, at ¶ 26, citing United States v.Skeddle (N.D.Ohio 1997), 989 F.Supp. 890 (The attorney-client privilege "cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purposes").
 {¶ 23} "The attorney-client privilege is not an absolute privilege, and it applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." Id. We cannot conclude that the trial court acted unreasonably in finding that the disputed information is not protected by either the work product or attorney-client privileges. AES' first assigned error lacks merit, and it is therefore overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN RULING UPON [APPELLEES'] MOTION WITHOUT CONDUCTING AN IN CAMERA INSPECTION OF THE MATERIALS ABOUT WHICH AES ASSERTED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES."
 {¶ 24} In their second assignment of error, AES contends that the trial court erred in ruling upon Appellees' motion to compel production without conducting an in camera inspection of the contested materials. We disagree.
 {¶ 25} Here, the attorney-client privilege and attorney work product doctrine were the only bases AES asserted on appeal as protecting this information from discovery. Because neither doctrine prevents disclosure of the information at issue here, the trial court would have no reason to conduct an in camera inspection of the documents. Furthermore, AES failed to point to specific documents that they claimed as privileged and thereby requiring in camera inspection. Peyko v. Frederick (1986),25 Ohio St.3d 164, the case cited by AES in support of their contention that the trial court was required to conduct an in camera hearing, was limited to cases involving insurance claim files and is therefore distinguishable. We find that the trial court did not abuse its discretion in not conducting an in camera inspection. AES' second assignment of error is overruled.
 III. {¶ 26} Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Baird. J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)