**FIRST UNION NATIONAL BANK OF DELAWARE, Appellant,**

v.

**MAENLE et al., Appellees.**

[Cite as *First Union Natl. Bank of Delaware v. Maenle,*
162 Ohio App.3d 479, 2005-Ohio-4021.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–04–036.

Decided July 22, 2005.

480

482

James S. Wertheim and Barbara Friedman Yaksic, for appellant.

James J. Martin and Robert W. Gentzel, for appellees.

Skow, Judge.

{¶ 1} Appellant, First Union National Bank of Delaware, N.A.—f.k.a. First Union Home Equity Bank, N.A., n.k.a. Wachovia National Bank of Delaware, N.A.—("Wachovia"), appeals from an order by the Huron County Court of Common Pleas that granted appellant's motion to compel discovery. Because we agree with appellant that the trial court erred in finding only a partial waiver of the attorney-client privilege, we reverse.

{¶ 2} This case arises from a foreclosure action filed by Wachovia against appellees, Inez Maenle and her incompetent adult son, John Maenle, on May 13, 2002. Mrs. Maenle had been the guardian for John Maenle, who was incompetent because of mental retardation, since August 20, 1978. Robert W. Gentzel represented Mrs. Maenle in her capacity as John's guardian.

{¶ 3} In 1999, Mrs. Maenle entered into three loan contracts with Wachovia's predecessor in interest, First Union Home Equity Bank, N.A. ("FUHEB"). The first loan was made in April 1999 and was in the amount of $35,000. In October of that year, Mrs. Maenle refinanced the April loan by obtaining two additional loans from FUHEB, one for $54,000 and another for $14,500. Both Mrs. Maenle and her son, John, signed notes and related mortgages on the home that was owned solely by Mrs. Maenle. FUHEB asserts that it had no idea that John Maenle was incompetent.

{¶ 4} The October loans went into default, and on May 13, 2002, Wachovia initiated its action seeking foreclosure on the property and judgment on the $54,000 note. Soon after the lawsuit was filed, counsel for appellant filed a suggestion of death indicating that Mrs. Maenle had passed away. At Wachovia's request, the trial court entered an order adding as defendants in Wachovia's action "[u]nknown heirs and their spouses, the devisees, legatees, executors, administrators, spouses and assigns and the unknown guardians of minor and/or incompetent heirs of Inez Maenle."

{¶ 5} On June 14, 2002, Gentzel was appointed, at his request, to serve as administrator of Mrs. Maenle's estate. Soon after, on June 20, 2002, Gentzel moved for leave to plead in the matter, both as administrator of the estate and on behalf of John Maenle's guardian. The motion was granted, and, as a result, Gentzel, as administrator to the estate, was added as a party to the lawsuit.

{¶ 6} In response to the original complaint, counterclaimants Gentzel, as administrator, and John Maenle, by and through his guardian, asserted claims of slander of title and improvident lending and unconscionability.

{¶ 7} On December 12, 2002, Wachovia filed its first amended complaint, wherein it reasserted its claim for foreclosure on the property but dropped its claim seeking judgment on the note.

{¶ 8} In response to the first amended complaint, the counterclaimants asserted counterclaims for (1) vicarious liability, (2) fraud, (3) improvident lending and unconscionability, and (4) breach of fiduciary duty. In addition, the counterclaimants filed a third-party complaint against A.I.M. Agency, Inc., the mortgage broker that brokered the loans.

{¶ 9} About a year later, on December 18, 2003, the counterclaimants filed a second amended counterclaim adding two new claims: (1) civil conspiracy and (2)

a class-action claim stating that members of the class were fraudulently charged for an appraisal of the property that was never conducted.

{¶ 10} On April 14, 2004, the probate court granted a request by Gentzel to substitute John Ball as administrator of the estate. Two weeks later, the counterclaimants filed a third amended counterclaim, this time adding a collection claim.

{¶ 11} On July 14, 2004, counsel for appellants sought a protective order to preclude Wachovia from taking Gentzel's deposition on grounds that Gentzel's testimony was protected by attorney-client privilege. The trial court denied the request, finding that Wachovia had the right to inquire into those matters in which Gentzel was involved as administrator of the estate.

{¶ 12} Wachovia attempted to depose Gentzel on July 19, 2004. However, Gentzel refused to answer the majority of questions posed, repeatedly asserting that his answers were protected by attorney-client privilege. Gentzel admitted at the deposition that he was unable to determine whether the knowledge he had was obtained as a result of his role as attorney or as a result of his role as administrator.

{¶ 13} Gentzel also invoked the privilege when asked to identify documents that he had produced in connection with his responses to Wachovia's document requests. Wachovia had previously submitted separate document requests to appellee Catholic Charities as guardian of John Maenle, and to Gentzel as administrator. Although Wachovia received separate written responses from each, the counterclaimants produced only one set of documents, without distinguishing which party had produced which documents. After Gentzel invoked the attorney-client privilege to avoid testifying about the documents, Wachovia recessed the deposition to seek relief from the court.

{¶ 14} On August 26, 2004, Wachovia filed a "Motion and Incorporated Memorandum to Strike Counterclaims and Defenses of the Administrator of the Estate of Inez Maenle, or Alternatively, to Compel Discovery" in which it alternatively asked the court to order Gentzel, as former administrator of the estate, and Ball, as successor administrator, to fully and completely answer Wachovia's deposition questions and discovery requests.

{¶ 15} On September 14, 2004, the trial court entered a judgment ruling that the attorney-client privilege was waived as to those matters for which Gentzel had responsibility as administrator, but not for knowledge that was acquired before Gentzel's appointment as administrator or for knowledge that was acquired after he stopped being administrator. Specifically, the court wrote:

{¶ 16} "When an attorney intertwines his role as attorney with his role in another capacity, such as the administrator of an estate or as guardian of the

estate or of the person of his client, the attorney-client privilege is waived as to those matters for which he had responsibility as administrator or guardian. * * *

{¶ 17} "The problem that arises in the dual capacity situation is that when one person takes on two different roles, it becomes difficult for that person to know or later recall in what capacity he obtained certain information. That which may have been privileged becomes blended with that which may not have been privileged and the attorney in good conscience cannot later distinguish which is which. As Mr. Gentzel testified: 'I'm going to assert, again, attorney-client privilege. My role as administrator also was ... I was also attorney for the Estate and I can't disentangle those two relationships in answer to your question.' So Mr. Gentzel, an attorney, erred on the side of caution and essentially made his deposition as administrator useless.

{¶ 18} " * * * If the administrator or guardian chooses to appoint himself as his own attorney, then public policy requires that by doing so, he waives the attorney-client privilege and thereafter as administrator he cannot assert that privilege. To hold otherwise would totally frustrate the ability of an opponent to obtain legitimate discovery from the administrator.

{¶ 19} " * * * [T]he principle of necessity makes it imperative that the administrator of Mrs. Maenle's estate not be able to hide behind the attorney-client privilege to avoid answering questions pertaining to the prosecution and factual undergirding of Defendants' affirmative defenses and counterclaim [sic].

{¶ 20} "This case is made more complicated by the fact that Mr. Gentzel was the attorney for Mrs. Maenle before her death and remains one of the attorneys for her estate after a substitute administrator was appointed to replace him as administrator of Mrs. Maenle's estate. The complication occurs because as Mr. Gentzel testified, he 'can't disentangle those two relationships' of administrator and attorney. Thus, while there are three distinct time periods (1) while Mrs. Maenle was alive and Mr. Gentzel was her attorney, (2) while Mr. Gentzel served as both administrator of and attorney to Mrs. Maenle's estate, and (3) while Mr. Gentzel has served only as co-counsel for Mrs. Maenle's estate), it may not be possible for Mr. Gentzel to sort out in his own mind when he acquired the knowledge that he presently has. To the extent that he cannot do that, the Court holds the attorney-client privilege is waived. Furthermore, the protection of the Civil Rules for attorney work product as to those matters that are factual, as opposed to legal, is also waived to the extent that Mr. Gentzel cannot establish that his knowledge was the result of a client communication from Mrs. Maenle, when she was living, or from Mr. Ball, the successor administrator of her estate.

{¶ 21} "Based on the above analysis, Plaintiff may not inquire of Mr. Gentzel as to communications between Mrs. Maenle and him when he was acting in his

capacity as her attorney, but can inquire into those facts not protected by the attorney-client privilege for that period when she was living. * * * As to the second period when Mr. Gentzel served as both administrator of and attorney to Mrs. Maenle's estate, Mr. Gentzel must answer all questions calling for factual responses because by having held both positions and having testified that he cannot disentangle in his own mind what he knows as the estate's attorney from what he knows as the estate's administrator, he has waived both the attorney-client privilege and the Civil Rules' protection for attorney work product. As to that period since Mr. Ball has been the administrator of Mrs. Maenle's estate, Plaintiff may not inquire as to any communications between Mr. Ball and Mr. Gentzel, when Mr. Gentzel was acting in his capacity as the attorney for the estate.

{¶ 22} "To the extent that Mr. Gentzel is asked a question that calls for a factual response, irrespective of the time period, he must answer the question unless he can 'specifically recall' that information he knows that is relevant to the answer was communicated to him by his clients, Mrs. Maenle or Mr. Ball. 'Specifically recall' means that he can state the circumstances under which he received the information and that he has a record, which he must produce at the deposition, to establish that he met with his client on that occasion. In effect, the Court has created a presumption that Mr. Gentzel's factual knowledge pertaining to this case was acquired as the administrator of Mrs. Maenle's estate because it was during that period that Mr. Gentzel, as the attorney for the estate, asserted the defenses and counterclaim for which discovery is now sought by the Plaintiff. Because Mr. Gentzel blended those positions, the Defendants must overcome that presumption by specifically demonstrating that Mr. Gentzel's knowledge was acquired when he was acting solely in his capacity as the attorney for Mrs. Maenle or for the estate after Mr. Ball succeeded him as administrator."

{¶ 23} The trial court expressly stated that its order was a final appealable order pursuant to R.C. 2505.02(B)(4). Wachovia timely filed its appeal of the trial court's order, asserting the following as its sole assignment of error: "The trial court erred in failing to find that the attorney-client privilege was completely waived."

{¶ 24} We first address the issue of the applicable standard of review. Appellees argue that because the question before us concerns the management of discovery, our review in this case is limited to a determination of whether the trial court abused its discretion.

{¶ 25} Appellees are correct to the extent that the rulings regarding the regulation of the discovery process are generally reviewed on appeal under an abuse-of-discretion standard. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659. However, where the trial court has

misstated the law or applied the incorrect law and thereby given rise to a purely legal question, appellate review is de novo. *Shaffer v. OhioHealth Corp.*, 10th Dist. No. 03AP–102, 2004-Ohio-63, 2004 WL 35725, at ¶ 6, citing *Ohio State Bd. of Pharmacy v. Dick's Pharmacy* (2002), 150 Ohio App.3d 343, 780 N.E.2d 1075; *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808.

{¶ 26} Because we recognize that it is generally appropriate for an appellate court to defer to the trial court with respect to discovery determinations, we adopt the following preliminary statement as set forth by the court in *Shaffer* at ¶ 6:

■ {¶ 27} "We will apply these differing standards [of review] to various aspects of the present matter as appropriate. We will also approach the matter with full awareness that, while certain discovery rulings such as the one before us have been held to constitute final appealable orders and give rise to an interlocutory appeal under R.C. 2505.02(B), there is cause for caution and restraint when addressing such matters in the appellate context. We are hesitant, to say the least, to put this court in the position of managing discovery in the place of the trial court. This is a domain where the trial court traditionally and justifiably exercises a wide degree of discretion based on its superior familiarity with all aspects of the case and inherent need to manage the proceedings before it, and we accordingly will limit our determinations to questions that can be adequately circumscribed for appellate review, without unduly fettering the trial court's ability to deal with future evolution of the case."

■ {¶ 28} The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584. "The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice." *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 329, 612 N.E.2d 442. Thus, the privilege belongs to the client, and the only materials protected are those that involve communications with the client's attorney. Id. Although not absolute, the privilege remains inviolate unless it is clearly waived. *H & D Steel Serv. Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), 8th Dist. No. 72758, 1998 WL 413772.

■ {¶ 29} Waiver of the attorney-client privilege can be express or implied. *In re Guardianship of Simmons*, 6th Dist. No. WD–02–039, 2003-Ohio-5416, 2003 WL 22319415, at ¶ 30. To determine whether waiver can be implied

by the conduct of one asserting the privilege, Ohio courts have used a test that was initially set forth in *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574. See *Ward v. Graydon, Head & Ritchey* (2001), 147 Ohio App.3d 325, 330, 770 N.E.2d 613; *H & D Steel Serv., Inc.*, supra. Under *Hearn*, a party impliedly waives the attorney-client privilege through its own affirmative conduct if (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to its defense.[1] *Hearn*, 68 F.R.D. at 581.

{¶ 30} Wachovia contends that the assertion of the privilege in this case is the result of Gentzel's decision to act in multiple roles in this case. As indicated above, prior to Mrs. Maenle's death, Gentzel represented Mrs. Maenle both in her individual capacity and in her separate capacity as guardian for John Maenle. Later, as administrator of Mrs. Maenle's estate, Gentzel was Mrs. Maenle's legal successor, who acted and spoke for the estate. In addition, he was the real party in interest, both in defending Wachovia's foreclosure claim against Mrs. Maenle and when he filed counterclaims against Wachovia.

{¶ 31} As counsel for the estate, Gentzel's role was to represent the interests of himself, and later Ball, as administrator. As counsel for Catholic Charities, his role was to represent the interests of Catholic Charities as guardian for John Maenle.

{¶ 32} In adding the class-action counterclaim, Gentzel elected to serve in the additional capacities of class representative and class counsel, where his role was to represent the interests of all of the class members, regardless of whether those interests differed from the interests of the estate or those of Catholic Charities.

{¶ 33} There is no question but that had Gentzel not signed on as counsel for the estate, he would not need to assert the privilege. And had he not volunteered to be administrator, he would not have been a real party in interest and the primary source of facts in support of the estate's affirmative defenses and counterclaims. As stated previously, the first prong of the *Hearn* tripartite test requires that assertion of the privilege be the result of some affirmative act by the asserting party. *Hearn*, supra, 68 F.R.D. at 581. On the basis of the foregoing facts, we find that the first prong of the test has been satisfied.

---

1. Although the trial court appears to have relied generally on the principles set forth in *Hearn* in order to reach its conclusion that Gentzel, as administrator, waived the attorney-client privilege, the judgment entry setting forth this conclusion does not specifically discuss the *Hearn* tripartite test and its application to this case.

{¶ 34} The second prong of the *Hearn* test requires us to determine whether Gentzel's decision to act in the above-mentioned capacities has placed the allegedly protected information at issue. We find that it has. By asserting, as the real party in interest, affirmative defenses and counterclaims that were necessarily based on Mrs. Maenle's knowledge of the facts, Gentzel has clearly placed Mrs. Maenle's communications with him at issue. Accordingly, we find that the second prong of the *Hearn* test has been satisfied.

{¶ 35} The third and final prong of the *Hearn* test requires a determination whether application of the privilege would have denied the opposing party access to information vital to its defense. Review of the counterclaimants' claims and defenses reveals that many of the factual grounds for them—most notably, those in support of the counterclaimants' claim for fraud—likely cannot be obtained from sources other than Gentzel. Also, based on our review of the facts of this case, we find that Gentzel was and is almost certainly the best, if not the only, source of information concerning such matters as his investigation of the counterclaims and of the damages allegedly suffered by the estate as a result of the activities alleged in the counterclaims. Under these circumstances, it is our opinion that application of the privilege would unfairly deny Wachovia access to information vital to its defense. Accordingly, we find that the final prong of the *Hearn* test has been satisfied.

{¶ 36} The *Hearn* test having thus been met, we agree with the trial court that appellees have impliedly waived the attorney-client privilege.

{¶ 37} Wachovia argues that although the trial court correctly found that Gentzel waived the attorney-client privilege by injecting allegedly privileged matters into the litigation, the scope of the waiver should be more broadly found to include the time periods before and after Gentzel was appointed to serve as administrator. We agree.

{¶ 38} As we held in *In re Guardianship of Simmons*, "[a] partial, voluntary disclosure of privileged material constitutes a waiver of privilege for the remaining material which relates to the same subject matter." Id., 2003-Ohio-5416, 2003 WL 22319415, at ¶ 30, citing *Mid–Am. Natl. Bank & Trust Co. v. Cincinnati Ins. Co.* (1991), 74 Ohio App.3d 481, 489, 599 N.E.2d 699. Ohio courts have viewed the term "same subject" as encompassing not just the subject of an actual communication voluntarily testified to by the client but rather the subject of the entire controversy about which the client testifies. *Walsh v. Barcelona Assoc., Inc.* (1984), 16 Ohio App.3d 470, 471–472, 16 OBR 553, 476 N.E.2d 1090.

{¶ 39} In applying the foregoing law to the facts of this case, it becomes clear that Gentzel's conduct as administrator put at issue all allegedly confidential or privileged communications that Mrs. Maenle might have had with him concerning

the claims and defenses at issue in this proceeding. Because Gentzel has admitted that he is unable to determine when and in what capacity he obtained his knowledge about relevant matters, the waiver necessarily applies to all communications concerning the subject of Gentzel's knowledge of the claims and defenses alleged by the estate, regardless of when and to whom they were made. We therefore find that the trial court erred as a matter of law in finding only a partial waiver of the attorney-client privilege in this case.[2]

{¶ 40} Appellees do not challenge this conclusion. Rather, in arguing that Wachovia should be denied the requested relief of a complete waiver, appellees claim that Wachovia *invited* the trial court's error by specifically requesting the limited waiver that was ultimately granted.

{¶ 41} Under the invited-error doctrine, a party is not permitted to take advantage of an error that he himself invited or induced the court to make. *Davis v. Wolfe* (2001), 92 Ohio St.3d 549, 751 N.E.2d 1051. In support of its argument that Wachovia was somehow responsible for the trial court's error, appellees point to the following language contained in Wachovia's request to the trial court: "Wachovia requests that the court issue an order again compelling Mr. Gentzel to fully testify *to matters in which he was involved as administrator,* and compelling the current administrator to fully and completely respond to all prior discovery requests." (Emphasis added.) Appellees argue that this language expressly limited the request to those situations in which Gentzel was acting as administrator, thereby prompting the trial court to issue its too-narrow ruling. We are not persuaded by this argument.

{¶ 42} In addition to Wachovia's request for an order compelling Gentzel to testify to those matters "in which he was involved as an administrator," Wachovia more broadly stated in the same document that it sought an order compelling Gentzel to "fully and completely answer Wachovia's deposition questions and discovery requests." As part of the same request, Wachovia additionally argued: "As implicitly recognized by the July 16 order, Mr. Gentzel has waived the estate's ability to assert the attorney-client privilege in this proceeding." Viewing Wachovia's request to compel in its entirety, we do not find that it invited or induced the trial court to err in its ruling. Appellees' argument to the contrary is therefore without merit.

{¶ 43} On the basis of the foregoing, we find Wachovia's assignment of error well taken. Accordingly, the judgment of the Huron County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision.

---

2. This finding of error on the part of the trial court will likely have little, or no, practical effect in this case, where the restrictive provisions in the trial court's September 14, 2004 order had already made it almost impossible for Gentzel to claim the privilege.

Appellees are ordered to pay the costs of this appeal, for which sum judgment is rendered against appellees on behalf of Huron County and for which execution is awarded. See App.R.24.

Judgment reversed.

PIETRYKOWSKI and SINGER, JJ., concur.