OPINION
{¶ 1} Defendant-appellant, Westerville City Schools ("Westerville Schools"), has brought these interlocutory appeals from a discovery order entered by the Franklin County Court of Common Pleas in favor of plaintiff-appellee, The Kirk Williams Company, Inc. ("Kirk Williams"), plaintiff-appellee The Miles-McClellan Construction Company, Inc. ("Miles-McClellan"), third-party defendant-appellee Romanoff Electric ("Romanoff"), and third-party defendant-appellee Apex MP Construction, Inc. ("Apex"). Westerville Schools' counsel in the trial court, the Columbus law firm of Bricker Eckler, LLP ("Bricker"), which became a party to the action in the trial court pursuant to an amended complaint filed (under seal) by Miles-McClellan asserting causes of action directly against Bricker, has also filed a notice of appeal and brief as an appellant in this matter. The underlying merits of this matter concern disputes arising out of a construction project undertaken by Westerville Schools, but the immediate issues raised in this interlocutory appeal concern application of attorney-client privilege to various documents produced in discovery.
 {¶ 2} Contractors Miles-McClellan and Kirk Williams filed separate actions against Westerville Schools seeking additional compensation for their performance under their construction contracts. Westerville Schools counterclaimed against Miles-McClellan and Kirk Williams and filed a third-party complaint against Romanoff, Apex, The Quandel Group, Inc. ("Quandel"), which was the project manager for the job, and Firestone, Jaros, Mullin, Inc. ("FJM"), the project architect, seeking contribution from these third-party defendants.
 {¶ 3} During the course of normal discovery in the case, Bricker produced for inspection and copying by counsel for Miles-McClellan a number of documents and records belonging to Westerville Schools. During the course of this discovery, Miles-McClellan without objection from Westerville Schools or Bricker copied or otherwise came into possession of several documents now claimed by Bricker and Westerville Schools to be covered by the attorney-client privilege. Kirk Williams likewise obtained, pursuant to subpoenas, some privileged Westerville Schools documents from Quandel.[1]
 {¶ 4} Upon learning that Miles-McClellan and Kirk Williams had come into possession of these privileged documents, Westerville Schools filed a motion to compel return of the documents. Bricker and Westerville Schools also filed motions for a protective order regarding the documents. Apex and Romanoff, having learned of the existence of the documents, subpoenaed Miles-McClellan for copies. Miles-McClellan and Kirk Williams then filed the documents under seal with the trial court, with a corresponding motion to declare the attorney-client privilege waived as to both the documents themselves and all related materials.
 {¶ 5} The trial court denied Bricker and Westerville Schools' motions for protective orders and granted appellees' motions to declare the attorney-client privilege waived in relation to the produced documents and all related materials. The trial court found that the privileged documents had been voluntarily, if inadvertently, produced, and that the law in Ohio establishes that any voluntary disclosure of privileged documents constitutes a waiver of privilege as to the documents themselves, and also as to other communications between attorney and client on the same or related subjects. The trial court then stayed enforcement of its order pending the outcome of the present appeal.
 {¶ 6} Bricker has timely appealed bringing the following assignments of error:
[1.] The Common Pleas Court erred in granting Plaintiffs' motions to declare Defendant's attorney-client privilege waived, and in denying Defendants' motions for protective order to compel return of inadvertently produced privileged documents.
[2.] The Common Pleas Court erred by refusing to hold a hearing to determine whether Defendant had knowingly and voluntarily waived its attorney-client privilege, or whether its privileged documents were disclosed solely as the result of inadvertence and mistake during a large document production in complex litigation.
 {¶ 7} Westerville Schools have timely appealed bringing the following assignments of error:
1. The trial court erred in granting Plaintiffs' motions to declare the attorney-client privilege waived and to compel the production of documents because those documents were protected by the privilege.
2. The trial court erred in denying Westerville City School District's and Bricker Eckler's motions for a protective order, concluding that the School District's attorney-client privilege had been waived, because for Westerville to waive its attorney-client privilege requires more than a showing of inadvertent, unintended, unknowing, and unauthorized disclosure of documents by its agents.
 {¶ 8} We will begin our discussion with certain general observations necessary in this case. Generally, discovery orders by a trial court have traditionally not constituted final, appealable orders in Ohio. In the case of an order compelling the production or disclosure of material allegedly protected by attorney-client privilege, however, an interlocutory appeal will lie. Shaffer v. OhioHealth Corp., Franklin App. No. 03AP-102,2004-Ohio-63, at ¶ 6. Most aspects of trial court rulings in the discovery process will be reviewed under an abuse-of-discretion standard. State ex rel. Daggett v. Gessaman (1973),34 Ohio St.2d 55. However, where the trial court has either misstated the law or applied an incorrect legal standard, giving rise to a purely legal issue on appeal, our appellate review is de novo.Shaffer, at ¶ 6; Ohio State Bd. of Pharmacy v. Dick'sPharmacy, 150 Ohio App.3d 343, 2002-Ohio-6500. Moreover, because we strongly wish to maintain the traditional deference of appellate courts toward the trial court with respect to discovery determinations, we adopt the following preliminary propositions set forth by this court in Shaffer, at ¶ 6:
* * * We will apply these differing standards [of review] to various aspects of the present matter as appropriate. We will also approach the matter with full awareness that, while certain discovery rulings such as the one before us have been held to constitute final appealable orders and give rise to an interlocutory appeal under R.C. 2505.02(B), there is cause for caution and restraint when addressing such matters in the appellate context. We are hesitant, to say the least, to put this court in the position of managing discovery in the place of the trial court. This is a domain where the trial court traditionally and justifiably exercises a wide degree of discretion based on its superior familiarity with all aspects of the case and inherent need to manage the proceedings before it, and we accordingly will limit our determinations to questions that can be adequately circumscribed for appellate review, without unduly fettering the trial court's ability to deal with the future evolution of the case.
 {¶ 9} The attorney-client privilege, which lies at the heart of the present matter, "bestows upon a client a privilege to refuse to disclose and prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice." Frank W.Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc. (1992),82 Ohio App.3d 322, 329. The privilege will be deemed invoked and effective unless clearly waived. H D Steel Service, Inc. v.Westin, Hurd, Fallon, Paisley Howley (July 23, 1998), Cuyahoga App. No. 72758. Waiver of the attorney-client privilege may be either express or implied. Ward v. Graydon, Head Ritchey
(2001), 147 Ohio App.3d 325, 330.
 {¶ 10} Together, the various assignments of error of the appellants present, in essence, two issues we will address: first, whether an inadvertent disclosure of privileged documents to opposing counsel during the discovery process waives, in whole or in part, attorney-client privilege with respect to those documents and related materials and, second, whether a school board in Ohio can effectuate any waiver of any kind through actions of its attorney-agent, without meeting and formally passing a resolution with all due procedural requirements to authorize the waiver.
 {¶ 11} We begin by briefly addressing Westerville Schools' second assignment of error, which asserts that attorney-client privilege could only be waived by an affirmative vote reflected in an explicit resolution of the school board acting as a body. As the trial court found, Westerville Schools authorized Bricker, its attorney and thus its agent for purposes of litigation, to engage in discovery, produce documents, review documents, and perform all functions attendant to the management of documents in the case, whether privileged or not. Likewise, Quandel and FJM functioned as agents of Westerville Schools when they produced privileged documents in the case to opposing parties. The authorities cited and relied upon by Westerville Schools for the proposition that the school disctrict could not waive privilege absent an express resolution by the board, principally CurrentSource, Inc. v. Elyria City School Dist., 157 Ohio App.3d 765,2004-Ohio-3433, are not on point and merely reflect the fact that under statute, the ratification of a contract requires affirmative board action and authorization. In the present case, assuming that appointment of Bricker as counsel was appropriately ratified, the actions of such a properly-appointed agent in conduct of the litigation must be taken as authorized by the principal, and Westerville Schools have presented no authority to the contrary. We accordingly find that this argument by Westerville Schools is not well-taken, and Westerville Schools' second assignment of error is overruled.
 {¶ 12} We now turn to the more complex question of the effect upon claimed attorney-client privilege of inadvertent disclosure of privileged documents during discovery. We find this to be essentially a matter of first impression in the state of Ohio. In so concluding, we note specifically that this is not a case in which the party asserting privilege did so after knowingly and intentionally releasing the privileged documents to the press or opposing parties, as was the case in Mid-American Natl. Bank Trust Co. v. Cincinnati Ins. (1991), 74 Ohio App.3d 481, andHollingsworth v. Time Warner Cable, 157 Ohio App.3d 539,2004-Ohio-3130. Nor is this a case in which the party asserting attorney-client privilege has impliedly waived that privilege by affirmatively placing protected information at issue by making it relevant to the case, that is, e.g., where the substance of the attorney-client relationship has become part of the merits of the matter, as in Ward, supra, and First Union Natl. Bank ofDelaware v. Maenle, 162 Ohio App.3d 479, 2005-Ohio-4021. As the parties seem to agree in briefing the matter to this court, this case specifically concerns a situation in which the party asserting privilege inadvertently but voluntarily produced documents during discovery.
 {¶ 13} To further frame the discussion, we will define for our purposes some of the terms to which the parties, and courts in jurisdictions that have addressed this question, assign conflicting meaning. The parties before us spar to some extent over the meaning and applicability of the terms "voluntary," "intentional," and "inadvertent" in this context. Without torturing the dictionary, we find that disclosure of the privileged materials in this case was voluntary to the extent that it did not result from deceptive or coercive actions on the part of the parties who came into their possession: Bricker and Westerville Schools freely made the documents available along with the larger mass of discoverable materials requested during discovery. To the extent that production of the privileged materials was certainly, at least after the fact, either regretted or undesired by Bricker and Westerville Schools, these entities are certainly entitled to describe the release of the documents as inadvertent, whether it resulted from clerical error, lack of oversight, or complete failure to review the requested materials prior to making them available. Likewise, appellants can claim that release of the materials wasunintentional, to distinguish the present case fromMid-American and Hollingsworth, since the privileged material was not deliberately conveyed either to an opposing party or the media with conscious intent to release the information therein. We will accordingly refer to the privileged documents in the present case as voluntarily, inadvertently, and unintentionally produced, however internally inconsistent this description might seem if applied elsewhere.
 {¶ 14} In the absence of conclusive authority in Ohio, we turn to other jurisdictions, principally federal, for guidance on the question of whether waiver occurs under these circumstances. There are three principal approaches taken by federal courts in cases of inadvertent disclosure of privileged communications.Draus v. HealthTrust, Inc. (1997), 172 F.R.D. 384. "Some cases have applied a test of strict accountability, holding that nearly any disclosure of the communication waives the privilege." Id. at 387. "Other courts have held that unintentional disclosure cannot waive the privilege. These courts have reasoned that a waiver of the privilege must be intentional, and that inadvertent disclosure therefore cannot waive the privilege." Id. "Other courts take a middle ground, deciding case-by-case whether the circumstances of the inadvertent disclosure warrant a finding that the privilege has been waived." Id. Inadvertent waiver is not "waiver in the standard sense in which the word is used in the law: the deliberate relinquishment of a known right."Dellwood Farms, Inc. v. Cargill, Inc. (1997), 128 F.3d 1122, citing United States v. Olano (1993), 507 U.S. 725, 733,113 S.Ct. 1770, 1777. When waiver in this form is found in cases of inadvertent disclosure, it is in order to "punish the person claiming the privilege for a mistake * * *." Id.
 {¶ 15} After weighing the sum of the authorities addressing the question of inadvertent disclosure of privileged information, we find that the middle ground, case-by-case approach is best suited to serve both the interests of justice and the encouragement of disciplined and effective discovery proceedings in the trial courts. To find that, on the one hand, waiver never occurs in cases of inadvertent disclosure, places an undue burden on the opposing party receiving the alleged privileged documents; this party is then unfairly charged with the duty of selecting and managing privileged and unprivileged documents, a burden that rightfully should fall upon the parties asserting the privilege. On the other hand, finding universal and unequivocal waiver of all documents (and related materials) inadvertently disclosed in the course of discovery may impose too harsh of an outcome on parties and counsel dealing with vast quantities of documents in complicated commercial litigation, as may be the case in the matter before us. The case-by-case approach offers the trial courts the best opportunity to manage discovery proceedings before them, wielding the "stick" of waiver to encourage parties to effectively and efficiently manage documents over which privilege may ultimately be asserted, while at the same time preventing windfalls that would result in a wholesale nullification of the attorney-client privilege.
 {¶ 16} Under this case-by-case basis, courts have applied a balancing test in which the court will weigh (1) the reasonableness of the precautions taken by the party asserting privilege to prevent the disclosure, (2) the time taken to rectify the inadvertent error, (3) the scope and nature of the discovery proceedings, (4) the extent of the disclosure in relation to a role in discovery proceedings, and (5) the overriding issue of fairness. Mattenson v. Baxter HealthcareCorp. (N.D.Ill. 2003), No. 02 C 3283 (Slip Opinion); Drauss,
at 389; Urban Outfitters, Inc. v. DPIC Co. (N.D.Ill. 2001),203 F.R.D. 376, 380. We hold that the law in Ohio shall be that the trial court, in addressing inadvertent disclosure of allegedly privileged documents in the course of discovery, must hold a hearing considering the above-outlined factors before determining to what extent, if any, waiver has occurred with respect to the contested materials. We accordingly will vacate the trial court's order and remand this matter to the trial court for such a hearing.
 {¶ 17} While the parties have to a certain extent attempted to contest in this appeal some of the evidentiary issues that the trial court will address upon remand, such as the overall number of documents inadvertently disclosed in relation to the size of discovery in the case, and the circumstances under which the documents were inadvertently disclosed, we expressly make no determination on the merits of these questions, which are not properly before us. The trial court will take up the matter again without constraint or guidance as to the outcome of its ruling beyond application of the balancing standard outlined in this decision.
 {¶ 18} Westerville Schools' first assignment of error and Bricker's first and second assignments of error are granted in part, solely to the extent the trial court applied what we determine to be an incorrect standard in its discovery ruling. Westerville Schools' second assignment of error is overruled. The matter is remanded to the trial court for further proceedings in accordance with law and this opinion.
Judgment reversed and cause remanded.
Klatt, P.J., and Brown, J., concurs.
[1] The question of the extent to which the documents in question would, absent waiver, actually qualify for protection under a claim of attorney-client privilege is not directly at issue is this appeal; the documents will, to avoid repetitious use of terms such as "allegedly" or "purportedly," be referred to herein as the "privileged documents," without thereby indicating any actual determination of that factual issue.